UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| REY DAVIS-BELL, a/k/a BILAL IMAN,<br><br>      Plaintiff,<br> v.<br><br>D. DAHNE, et al,<br><br>      Defendants. | Case No. 3:17-cv-05319-BHS-TLF<br><br>REPORT AND RECOMMENDATION CONCERNING MOTIONS FOR SUMMARY JUDGMENT<br><br>Noted for August 3, 2018 |

This matter is before the Court on plaintiff's motion for summary judgment (Dkt. 49) and defendants' cross motion for summary judgment (Dkt. 64). Plaintiff filed the lawsuit under 42 U.S.C. § 1983 for alleged violations of his First Amendment freedom of speech, expression, and religion rights, and his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Dkt. 44, Amended Complaint.

Mr. Iman seeks injunctive relief – first, he asks the Court to order the Washington State Department of Corrections (D.O.C.) to give him the ability to use his legal, religious name (Bilal Iman), as an AKA placed on the front of his offender identification badge. He asks to have his religious name located under his name that was used in the criminal case that caused him to be committed to the D.O.C. (Rey Davis-Bell, his "committed name"). Second, Mr. Iman asks the Court to order D.O.C. to recognize his legal religious name, and to give him the practical ability within D.O.C. to use that name in all services he uses during his incarceration. Dkt. 44, Amended

1  Complaint at 4. He also seeks a declaratory judgment stating that the failure to place his legal
2  religious name as an AKA on his ID card and refusal to allow him to use that AKA to obtain all
3  services related to his incarceration, violates his First Amendment and RLUIPA rights. Dkt. 44 at
4  15. In addition, Mr. Davis-Bell asks for nominal and punitive damages, filing fees, court costs,
5  and attorney's fees. *Id.* at 16.

6  This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of
7  H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4).
8  Plaintiff has moved for summary judgment (Dkt. 49) and defendants have filed a cross motion
9  for summary judgment (Dkt. 64). In their cross motion, defendants argue the claims against them
10  should be dismissed because plaintiff: (1) fails to present evidence to support a RLUIPA claim;
11  (2) fails to establish defendants knowingly placed a substantial burden on his exercise of
12  religion; and (3) fails to allege personal participation on defendants' part. Defendants further
13  argue they are entitled to qualified immunity.

14  Plaintiff has failed to establish the personal participation of defendants Dahne, Gilbert,
15  and Thrasher, and therefore summary judgment is appropriate as to those defendants as to the
16  lawsuit for damages in their individual capacities. As to the lawsuit for declaratory and
17  injunctive relief, plaintiff has not shown that these defendants have authority in their official
18  capacities to implement the relief he seeks. Therefore, all claims against them should be
19  dismissed with prejudice. In addition, defendant D.O.C. is not a "person" under 42 U.S.C. §
20  1983, summary judgment in favor of defendants is warranted as to the State. For these reasons,
21  as discussed below the undersigned recommends the Court grant defendants' cross motion for
22  summary judgment, deny plaintiff's motion for summary judgment, and dismiss this case with
23  prejudice.

24

25

I.     FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is an inmate at the Monroe Correctional Complex, located in Monroe, Washington. In January 2015, plaintiff – then an inmate at the Washington State Penitentiary ("WSP") in Walla Walla – legally changed his name from Rey Alberto Davis-Bell to Bilal Abdullah Iman. Dkt. 52, Declaration of Bilal Abdullah Iman (Iman Decl.), Dkt. 52-1, Appendix A, at 2-5. Plaintiff asserts that he changed his name to remain in accordance with his religious faith and practice, Sunni Muslim. Dkt. 52-1, Appendix A at 2.

The WSP Superintendent's Office[1] informed plaintiff that it had received the court order effecting his name change, and that the name "Bilal Addullah Iman" had been added to his file as an alias. Dkt. 52-1, Appendix B, memorandum dated January 28, 2015, at 7. The Superintendent's Office also informed Mr. Iman that pursuant to Washington State Department of Corrections ("D.O.C.") Policy 400.280, he must use the name under which he was committed to the D.O.C. for: (1) any written or verbal communication with D.O.C. employees, (2) any matter relating to his incarceration, and (3) the United States Mail, but for mailing he may use an "AKA" designation after his committed name for his legally changed name.[2] *Id.*

---

[1] The memorandum indicates it was written by Patricia Wilson, AA-3, who is not a party to this suit. Dkt. 52-1, p. 7.

[2] Specifically, Section III of D.O.C. Policy 400.280 states:

III.    Expectations
    A.    An offender who obtains an order changing his/her name must use the name under which s/he was committed to the [D.O.C.] for:
        1.    Any written or verbal communication with employees, contract staff, and volunteers,
        2.    All matters relating to his/her incarceration or community supervision, and
        3.    Use of the United States mail.
    B.    The offender may add the legally changed name after the committed name using an "Also Known As" (AKA) designation for the legally changed name.
    C.    Employees, contract staff, and volunteers will refer to offenders by their committed name in all oral and written communications to ensure the correct identification of offenders and to maintain safety and security.

1    The Superintendent's Office also informed Mr. Iman that WSP staff would not refer to
2    him by his legally changed name, and that all D.O.C. business would be conducted using his
3    committed name. *Id.* It further informed Mr. Iman that his legally changed name would not be
4    placed on his prison ID card, because it was not his committed name. *Id.* Lastly, it notified Mr.
5    Iman that his committed name would remain in his file, although his legally changed name
6    would be listed as an alias. Dkt. 52-1 at 7.

7    In September 2015, plaintiff – who at that point was incarcerated at the Stafford Creek
8    Corrections Center ("SCCC"), located in Aberdeen, Washington – submitted an "offender's
9    kite," requesting that his legally changed name be included as an AKA on his ID card along with
10   his committed name. Dkt. 52-1 at 8. A response from an SCCC staff member, C. Edwards,[3]
11   informed plaintiff that pursuant to D.O.C. Policy 400.280 his AKA would not be added to his ID
12   card. *Id.*

13   That same month, plaintiff submitted an "offender complaint" to the SCCC's grievance
14   coordinator, defendant D. Dahne, requesting that his legally changed name be added as an AKA
15   under his committed named on his ID card. *Id.* at 10. In response, defendant Dahne informed
16   plaintiff that per D.O.C. Policy 400.280, he was required to use his committed name. *Id.* at 10-
17   11. Plaintiff appealed defendant Dahne's response, which was denied by defendant Margaret
18   Gilbert, the SCCC Superintendent. *Id.* at 12.

19   A further appeal was denied by (then acting) Assistant Secretary/Deputy
20   Director/designee of the D.O.C., Scott Russell.[4] *Id.* at 13. In an email to another D.O.C.
21   employee, Rebecca A. Citrak, regarding plaintiff's complaint, D.O.C. Manager defendant

---

Dkt. 52-2, pp. 6-7.

[3] Mr. Edwards is not a party to this action

[4] Mr. Russell also is not a party to this action.

REPORT AND RECOMMENDATION CONCERNING
MOTIONS FOR SUMMARY JUDGMENT - 4

Timothy Thrasher states: "I have reviewed your grievance as well as your appeals and responses. I concur with the previous responses you have received. Nothing further will be done in regards to this grievance." Dkt. 44 at 3; 52-2 at 5; Dkt. 83, Plaintiff's Response Brief, at 77. No additional appeals by plaintiff or administrative action by the D.O.C. appear to have been taken following that email.

Plaintiff states his religious faith requires every aspect of his life to be in accordance with Islam. Dkt. 44 at 37; Dkt. 52-2 at 12. Plaintiff asserts that he must submit his whole self to Allah, including taking a name that fulfills his religious duties to Allah. Dkt. 44 at 37; Dkt. 52-2 at 12. His legal religious name change is a practice and expression of his faith. *Id.* Plaintiff asserts that by not being allowed to have his legal changed religious name on his prison ID card, his ability to practice his faith, as well his free speech and freedom of expression rights, have been burdened. *Id.*

The D.O.C. uses the Washington Offender Management System ("WOMS") to assign ID cards to inmates. Dkt. 65, Declaration of Charlotte Headley (Headly Decl.) at 2. The WOMS is a badging program the D.O.C. purchased from a vendor and implemented in 1999. *Id.* The ID cards contain personal characteristic fields consisting of photo, name, date of birth, hair and eye color, height, and weight. *Id.* The fields are limited to a specific number of characters. *Id.*

According to Charlotte Headley, the D.O.C.'s Security Management Unit Manager, these personal characteristics "are necessary identifiers for offender access and control of movement within prison facilities." *Id.* Further, "[a]ccurate information is necessary to ensure appropriate security levels are assigned/maintained." *Id.* Accurate information also influences a number of other safety and administration outcomes such as housing assignments, transportation standards, Prison Rape Elimination Act ("PREA") risk assessments, risk mitigation assessments necessary

1  for employee safety, offender work assignments, and other security measures necessary to safely

2  incarcerate offenders. *Id.*

3      The D.O.C. lacks the ability to alter the prison ID card personal characteristics fields,

4  which instead must be done by the WOMS vendor. *Id.* Ms. Headley states that "preliminary

5  conversations" regarding AKA information being added to the ID cards include a reconfiguration

6  of the cards, recoding the badging program, and "modifying necessary input screens." *Id.* The

7  estimated cost for making these changes is "upwards of $100,000," and would "impact the entire

8  D.O.C. badging system." Dkt. 65, Headley Decl. at 2.

9      In addition, Ms. Headley states that "[t]echnology upgrades to accommodate adding

10  AKA information would also compel modification/upgrades to other compatible programs which

11  use offender identification as a means to provide access" to services relating to offender meals

12  and compensation, prison work sites, and Washington State Library Services. *Id.* She further

13  states that an inter-agency agreement through which the Washington State Department of

14  Licensing accepts prison ID cards upon offender release may not be sustainable if these changes

15  are made, although this possibility has not been investigated. *Id.* at 3.

16      Ms. Headley also asserts that "[b]ecause of the high costs associated with obtaining new

17  software to add an AKA to the front of an ID card, the [D.O.C.] will permit inmates who obtain

18  legal name changes through a court order, to have their legal name added to the back of the card

19  using a label maker." *Id.* According to Ms. Headley, inmates that have their legally changed

20  names added in this manner, will be "permitted to turn the card over to present [their] legal name

21  as a form of recognized dual identification." *Id.*

22      Plaintiff asserts this option is not workable because no inmate is allowed to walk around

23  with his ID card reversed. Dkt. 83, Plaintiff's Response Brief, at 64. If an inmate approaches a

24

25

REPORT AND RECOMMENDATION CONCERNING
MOTIONS FOR SUMMARY JUDGMENT - 6

1  corrections officer with his ID card reversed, plaintiff further asserts, he will be immediately told
2  to turn the card around. *Id.* Because inmates must present their ID cards in order to obtain prison
3  services, plaintiff asserts he still will be forced to identify himself only by his committed name.
4  *Id.*

## II. DISCUSSION

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure ("F.R.C.P.") 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is supported as provided in F.R.C.P. 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as otherwise provided in F.R.C.P. 56, must set forth specific facts showing there is a genuine issue for trial. F.R.C.P. 56(e)(2).

If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id.* The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv.*, 809 F.2d at 630.

REPORT AND RECOMMENDATION CONCERNING
MOTIONS FOR SUMMARY JUDGMENT - 7

1    Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a
2 grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some
3 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477
4 U.S. at 290).

5 A.   <u>Plaintiff Fails to Establish Personal Participation on the Part of Defendants Dahne,
      Gilbert, and Thrasher, and Fails to Show that Defendants Have Necessary Authority in
6     their Official Capacities</u>

7    To establish section 1983 liability for damages, a plaintiff must show the defendants,
8 acting under color of state law, personally participated in the alleged deprivation of federal
9 constitutional or statutory rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). More
10 specifically, the plaintiff must allege the defendants, through their own individual actions,
11 violated those rights. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012).

12   Defendants argue that because their only involvement in the alleged deprivation of
13 plaintiff's constitutional and statutory rights is their denials of his grievances, plaintiff has failed
14 to establish they personally participated in the harm alleged, and therefore they cannot be held
15 liable for that harm.

16   "[I]nmates lack a separate constitutional entitlement to a specific prison grievance
17 procedure." *Ramirez v. Galaza* , 334 F.3d 850, 860 (9th Cir. 2003). Accordingly, it is not
18 unconstitutional merely "to deny a grievance." *Johnson v. Hayden*, 2012 WL 652586, at *3 (D.
19 Or. Feb. 10, 2012) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *Ramirez*, *supra*
20 at 860 (claimed loss of liberty interest in processing of inmate's disciplinary appeals "lack[ed]
21 the necessary constitutional foundation").

22   The courts have contrasted "[r]uling against a prisoner on an administrative complaint . . .
23 about a completed act of misconduct," which "does not cause or contribute to [a constitutional]

24

25

1   violation," with actually causing or participating in the constitutional violation itself. *George v.*
2   *Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). If the allegations show that the defendants only
3   denied grievances or failed to act, and there are no allegations that they "directly participated,
4   encouraged, authorized or acquiesced" in the claimed harm, the necessary showing of personal
5   participation has not been made. *Hayes v. Dovey*, 2011 WL 1157532, at *6 (S.D. Cal. Mar. 28,
6   2011) (quoting *Shehee*, *supra* at 295); *Johnson*, 2012 WL 652586, at *3.

7   Whether a defendant's involvement in the prison grievance process amounts to personal
8   involvement sufficient to state a claim of constitutional deprivation depends on several factors,
9   including "whether, at the time of the grievance response, the violation is ongoing" or instead is
10  continuing, and "whether the defendant responding to the grievance has authority to take action
11  to remedy the alleged violation." *Shaka v. Ryan*, 2015 WL 926192, at *8 (D Ariz. Mar. 4, 2015)
12  (citing *Flanory v. Bonn*, 604 F.3d 249, 256 (6th Cir. 2010); *Bonner v. Outlaw*, 552 F.3d 673, 679
13  (8th Cir. 2009); *Shehee*, 199 F.3d at 300).

14  Here, plaintiff asserts defendants Dahne, Gilbert, and Thrasher ruled against him during
15  his appeal of the denial of his request to have his legally changed religious name added to his
16  prison ID card. Dkt. 51 at 2; Dkt. 52-1 at 7-8, 10-13; Dkt. 52-2 at 5. Plaintiff does not show those
17  defendants had or have the authority, in their individual or official capacities, to change any
18  written prison policies, order any changes in practices, or make decisions that would alter
19  patterns of behavior that would amount to an informal or unwritten policy, to remedy the alleged
20  violation of plaintiff's rights by adding his legally changed religious name to the front of his
21  prison ID card. *See Pouncil v. Tilton,* 704 F.3d 568, 576 (9th Cir. 2012) (pro se complaint, in
22  which the plaintiff sued the prison warden who did not personally participate in alleged acts or
23  omissions, must be liberally construed to include a request for prospective injunctive relief for

which the warden of the prison was an appropriate defendant who had the necessary authority for ensuring that prospective injunctive relief would be carried out in his official capacity); *Denegal v. Brazelton,* 2015 WL 5601278 (E.D. Cal. 2015) (individual defendants, who were prison employees that denied plaintiff's administrative grievances regarding denial of plaintiff's request for a religious name change, were not proper defendants, because there was not a sufficient causal connection between their acts or omissions and the constitutional deprivation alleged by the plaintiff).

B. <u>The D.O.C. Is Not a "Person" Under Section 1983</u>

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the conduct complained of was committed by <u>a person</u> acting under color of state law, and (b) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Neither party has raised the issue of whether the D.O.C. is a "person" as defined pursuant to Section 1983.[5] A district court may *sua sponte* enter summary judgment when "there is no genuine dispute respecting a material fact essential to the proof of movant's case." *O'Keefe v. Van Boening*, 82 F.3d 322, 324 (9th Cir. 1996) (quoting *Buckingham v. United States*, 998 F.2d

---

[5] Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

735, 742 (9th Cir.1993)). However, the party against whom judgment is entered "must be given reasonable notice that the sufficiency of his or her claim will be in issue." *Id.*; *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 971-72 (9th Cir. 2010). "Reasonable notice implies adequate time to develop the facts on which the litigant will depend to oppose summary judgment." *Norse*, *supra* at 972 (quoting *Portsmouth Square Inc. v. S'holders Protective Comm.*, 770 F.2d 866, 869 (9th Cir.1985)).

Although plaintiff was not provided notice that the sufficiency of his claim against the D.O.C. would be in issue on this basis, the undersigned finds such notice is unnecessary. Dismissal of the D.O.C. because it is not a "person" under Section 1983 does not require the development of facts needed to oppose summary judgment. There is no genuine material issue of fact as to whether the D.O.C. is an agency of the state. *See O'Keefe*, 82 F.3d at 324 ("By *sua sponte* entering summary judgment in favor of O'Keefe, the district court may have deprived the State Officials of the opportunity to raise disputed issues of material fact.").

There can be no remedy under 42 U.S.C. § 1983 against the State of Washington, because a state "is not a person within the meaning of § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997).[6] As an arm of the state, a state agency is not a "person" within the meaning of section

---

[6] A state officer sued in his or her official capacity may be amenable to a suit for prospective injunctive relief. *Kentucky v. Graham,* 473 U.S. 159, 168-69 (1985); *Edelman v. Jordan,* 415 U.S. 651, 677 (1974). Mr. Iman has not identified appropriate defendants for prospective equitable relief in this matter. Plaintiff's lawsuit is a cause of action seeking damages, declaratory relief, and injunctive relief, against the State of Washington Department of Corrections, and employees of the State, regarding acts or omissions of specific defendants making administrative decisions about his individual grievances. *See Moore v. University of Kansas,* 118 F. Supp. 3d 1242, 1251 (D. Kan. 2015) (dismissing defendants, sued in their official capacities, who did not have authority to reinstate the plaintiff's employment).
    Although he has made allegations against all defendants in their individual and official capacities, he has not challenged any D.O.C. policy as being unconstitutional on its face, or made allegations against any person who has authority to change the policy or change any pattern or practice for how the policy is being implemented. *See Kentucky v. Graham,* at 168-69 and n. 14. (Commissioner of Kentucky State Police was sued in his individual and official capacity in order to recover attorney's fees, but not for prospective injunctive relief; plaintiff could not seek

1983. *Howlett By and Through Howlett v. Rose*, 496 U.S. 356, 365 (1990) Accordingly, because there is no question that the D.O.C. is an agency of the state, and is not a person under Section 1983, the Court should *sua sponte* enter summary judgment for the D.O.C. on this basis.

## CONCLUSION

Plaintiff has failed to establish personal participation, and has failed to establish authority that would be necessary for an official capacity lawsuit on the part of defendants Dahne, Gilbert, and Thrasher. All claims against those three defendants should be dismissed with prejudice. Defendant D.O.C. is not a person under Section 1983 and therefore cannot be liable for damages or for injunctive relief. All claims against D.O.C. should be dismissed with prejudice as well.

The undersigned therefore recommends the Court GRANT defendants' cross motion for summary judgment (Dkt. 64), DENY plaintiff's motion for summary judgment (Dkt. 49), and DISMISS with prejudice.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); F.R.C.P. 6; F.R.C.P. 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **August 3, 2018**, as noted in the caption.

Dated this 18th day of July, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

---

monetary damages from the Commissioner and "implementation of state policy or custom may be reached in federal court only because official-capacity actions for prospective relief are not treated as actions against the State.")

REPORT AND RECOMMENDATION CONCERNING
MOTIONS FOR SUMMARY JUDGMENT - 12